Ralph A. Horton and Louisa L. Horton v. Commissioner.
Horton v. Commissioner
Docket No. 40364.
United States Tax Court
T.C. Memo 1954-161; 1954 Tax Ct. Memo LEXIS 86; 13 T.C.M. (CCH) 899; T.C.M. (RIA) 54267; September 28, 1954, Filed *86 Robert C. Claiborne, Esq., Julian E. Ross, Esq., 608 Sweet Building, Fort Lauderdale, Fla., and Charles H. Lindfors, C.P.A., for the petitioners. Alben E. Carpens, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' income taxes for 1948 and 1949 in the respective amounts of $1,933.36 and $6,257.54. The sole issue is whether the respondent erred in his determination that for the taxable years involved the gain realized by petitioners from the sales of certain real estate constituted ordinary income. Findings of Fact Petitioners, husband and wife, are residents of Fort Lauderdale, Florida. Their joint income tax returns for 1948 and 1949 were filed with the collector of internal revenue for the district of Florida. From 1915 to 1925 petitioner Ralph A. Horton was actively engaged in the real estate business in and around Fort Lauderdale, Florida, operating under the name of Ralph A. Horton, Inc. During this period petitioners acquired title, individually and jointly, to many 25 and 50 foot residential lots in a local area known as "Progresso," which they held primarily for sale to customers *87 in the ordinary course of business. Petitioner Ralph A. Horton held a real estate broker's license for the year 1925. During the years 1931 to 1942, inclusive, petitioners were officers and controlling stockholders in Bond and Tax Adjustment Bureau, Inc., a corporation primarily engaged in handling securities and loaning money, but which also engaged in the real estate business. During the years 1933 to 1942, inclusive, petitioners were officers and controlling stockholders in City and County Holding Company, a corporation engaged in the business of buying and selling real estate and tax sale certificates. During the years 1938 to 1942, inclusive, petitioners were stockholders in Beth Corporation, a corporation engaged in the purchase and sale of real estate at tax sale auctions. From 1931 to 1942, inclusive, petitioner Ralph A. Horton had his office in room 611, Sweet Building, Fort Lauderdale, Florida, which was also the office address of the Bond and Tax Adjustment Bureau, Inc., and Beth Corporation. In connection with these corporations petitioner held from 1938 to 1940, inclusive, a real estate broker's license, as required by law. Petitioner Louisa L. Horton never held *88 a broker's license, nor ever engaged in any business operation other than in name only. Prior to its liquidation in December 1942 Bond and Tax Adjustment Bureau, Inc., of which petitioners were the controlling stockholders, foreclosed a mortgage which was secured by property located in and around Fort Lauderdale. The only bid received at the foreclosure sale on March 3, 1943, was that of the partnership of Ross, Horton, Hixson, Rickard and Hyde in the amount of $2,305. This partnership, which had been formed in order to bid at the foreclosure sale, was composed of all the stockholders of the then dissolved corporation, Bond and Tax Adjustment Bureau, Inc. Petitioners were the "Horton" member of the partnership and held a 35 per cent interest therein. On March 4, 1943, title to the foreclosed property, consisting of 166 lots, was acquired by the Tanger Investment Company, a use corporation, in trust for the use and benefit of the partnership of Ross, Horton, Hixon, Richard and Hyde, sometimes hereinafter referred to as Tanger Trust. On May 1, 1945, the Tanger Trust was terminated. The total reported sales of real estate during its existence were as follows: Lots
Trans-
Total
Year
acquired
Lots sold
actions
Cost basis
Sales price
gain
1943
166
37 plus
21
$ 4,905.20
$10,632.73
$ 5,727.53
1944
4
58 1/2
24
6,372.95
24,338.39
17,965.44
1945
1
29
8
5,081.65
21,348.44
16,266.79
171
124 1/2 plus
53
$16,359.80
$56,319.56
$39,959.76
*89 The Tanger Trust maintained no office of its own, the majority of closings being made in the office of the partner, Julian E. Ross, who usually prepared the deed. All records were maintained there during the entire period of the existence of the Tanger Trust. Although the Tanger Trust did no advertising, listing, or subdividing with respect to its assets, including subsequently acquired lots as well as the original 166, its sales activities were frequent and substantial due to the fact that the market for real estate in and around Fort Lauderdale at the time was such that persons interested in purchasing sought out the property owners. In May 1945, when the Tanger Trust terminated, petitioner allowed the titles to the lots comprising their 35 per cent interest to remain in the Tanger Investment Company. Of the 50 per cent interest held by Julian E. Ross, 15 per cent was received by him in actual distribution and the remaining 35 per cent of his interest was allowed to remain in the Tanger Investment Company. The other partners received distribution of their interests. From 1944 until the final distribution in liquidation in 1949, petitioners held a one-half interest in a partnership *90 with Julian E. Ross, known as Ross and Horton. This partnership, sometimes hereinafter referred to as the Flova Trust, was created in February 1944 under a declaration of trust whereby title to all partnership property was to be held in the name of the Tanger Investment Company, a use corporation. In May 1945 petitioners and Julian E. Ross each transferred the property constituting their respective interests from the Tanger Trust to the Flova Trust, title remaining in the name of the Tanger Investment Company. Most of the property held by the Flova Trust consisted of title to many unsold lots located in the Progresso subdivision. Petitioners had purchased the lots during the years 1915 to 1926, but, during the depression years following, they had allowed the tax payments to lapse on many of the lots. The activities of the Flova Trust consisted of paying up back taxes to redeem the Progresso lots and the acquisition and sale of other real estate. The partnership returns for the Flova Trust for the years 1944 to 1948, inclusive, show the following real estate transactions: Cost basis
Lots
Trans-
of lots
Total
Year
acquired
Lots sold
actions
sold
Sales price
gain
1944
Unknown
37 1/2 plus
13
$ 1,806.19
$ 4,642.71
$ 2,836.52
1945
Unknown
76
38
14,044.38
32,985.49
18,941.11
1946
Unknown
278 1/2
35
13,716.35
98,351.10
84,634.75
1947
Unknown
33
22
5,476.90
32,827.78
21,233.18
1948
Unknown
2
2
899.19
3,602.50
2,093.46
*91 The partnership, Ross and Horton, maintained no office of its own. Sales of real estate were made by purchasers contacting either petitioner Ralph A. Horton or his partner, Julian E. Ross, who kept the partnership records and prepared the final closings. In February 1948, with the exception of three parcels of land, the Flova Trust partnership distributed its assets equally between petitioners and Julian E. Ross. The partnership was finally liquidated as to the three parcels in 1949. During each of the taxable years 1948 and 1949 the real estate sold by the partnership, Ross and Horton, otherwise known as the Flova Trust, was property held primarily for sale to customers in the ordinary course of the partnership's real estate business. From 1944 to February 1948 petitioners held a one-eighth interest in the partnership, Horton, Hyde, Hixson, Rickard and Ross, sometimes hereinafter referred to as the Devon Trust partnership. This partnership was formed to acquire a large undeveloped tract of land consisting of 651 lots in a remote section of Fort Lauderdale. During the period the partnership was in existence no part of the large tract was ever sold, subdivided or improved, but *92 remained in its original condition until 1948, when it was sold for $18,000 to the Milford Corporation, a corporation engaged in the real estate business. Petitioners held 25 per cent of the stock of Milford Corporation, the remaining shares being held by the same persons in the same proportionate interests as previously held in the Devon Trust partnership. Other lands not included in the large tract were acquired by the Devon Trust in 1944 and 1945 and sold during the years 1946 through 1948, as follows: Lots
Trans-
Total
Year
acquired
Lots sold
actions
Cost basis
Sales price
gain
1946
Unknown
28
11
$4,447.17
$13,665.20
$ 9,218.03
1947
Unknown
Unknown
Unknown
3,195.99
19,817.50
12,912.35
1948
Unknown
1
1
89.20
977.34
888.14
The Devon Trust had no office of its own and selling was done by purchasers contacting the partners, Rickard, Hixson and Ross. The real estate sold by the partnership, Horton, Hyde, Hixson, Rickard and Ross, otherwise known as the Devon Trust, during the taxable year 1948 was property held primarily for sale to customers in the ordinary course of the partnership's real estate business. *93 During the years 1937 to 1952, inclusive, petitioners engaged in the following real estate transactions: Cost basis of
Total
Year
Lots sold
Transactions
lots sold
selling price
Gain
1937
8 plus 2 parcels
9
$ 5,466.25
$ 5,530.00
$ 63.75
1938
2
1
121.76
350.00
228.24
1939
11 plus
5
467.00
1,425.58
958.58
1940
81
81
12,097.63
15,255.32
3,157.69
1941
30
2
4,933.18
4,723.66
(209.52)
1942
5
3
925.00
1,490.69
565.69
1943
51 plus at least 3
11
1,870.95
3,656.35
1,785.40
parcels
1944
51 plus
Unknown
5,134.13
11,283.92
6,149.79
1945
28 plus
19
19,466.89
31,372.04
11,905.15
1946
16 1/2 plus acreage
10
3,412.00
18,550.00
15,138.00
1947
33 1/2 plus 2 par-
15
6,935.30
35,673.39
28,738.09
cels
1948
10 plus
16
10,852.75
51,522.86
40,670.11
1949
13 plus
11
13,772.16
56,499.04
42,726.88
1950
9 plus
8
10,309.83
25,384.06
15,074.23
1951
12 plus 2 parcels
8
24,343.09
62,507.17
38,164.08
1952
6
3
61.80
4,393.70
3,331.90
367 plus at least 14
202
$120,169.72
$329,617.78
$209,448.06
other parcels of
land
The specific dates on which the properties *94 were acquired are not available. The tax returns for the years 1940 to 1949, inclusive, show that the properties sold by the petitioners in those years had been acquired during the years 1919 to 1946, inclusive. During the years 1946 to 1951, inclusive, petitioners derived their income as follows: Line 1 - Sale real estate, petitioners, individually. Line 2 - Income to petitioners, sale real estate, Flova Trust. Line 3 - Income to petitioners, sale real estate, Tanger Trust. Line 4 - Income to petitioners, sale real estate, Devon Trust. Line 5 - Income from mortgage loans. Line 6 - Dividends. 1946
1947
1948
1949
1950
1951
1
$15,138.00
$28,738.09
$40,670.11
$42,726.88
$15,074.23
$38,164.08
2
37,242.70
10,616.59
1,733.74
374.00
3
1,152.27
1,614.04
4
111.02
5
3,017.53
5,427.51
5,610.42
7,153.26
8,393.85
9,580.52
6
3,504.76
$56,550.50
$46,396.23
$48,125.29
$50,254.14
$26,972.84
$47,744.60
The income arising from the item of mortgage loans represents various purchase money mortgage loans made by petitioner Ralph A. Horton in denominations of $6,000 to $7,000 at five or six per cent interest *95 primarily on real estate sold by him. During each of the taxable years 1948 and 1949 the petitioners were engaged in the real estate business. The real estate sold during the years in question was held primarily for sale to customers in the ordinary course of such business. Opinion LEMIRE, Judge: The sole question presented is whether the gains realized by the petitioners in the taxable years 1948 and 1949 from the sales of real property are taxable as ordinary income or as profits from the sale of capital assets. In determining whether the sales in question involve properties held primarily for sale to customers in the ordinary course of business or properties held for investment presents a factual question involving a consideration of all the pertinent facts and circumstances. ; ; , certiorari denied ; . The courts have advanced a number of tests that may be applied in determining the question. Among the factors primarily emphasized are the *96 taxpayer's purpose in acquiring the property, the continuity, frequency, and substantiality of the transactions, and the sales activities in relation thereto. No one of such tests is determinative. The record shows that in 1925 petitioner Ralph A. Horton was a licensed real estate broker in Fort Lauderdale, Florida, and that for some ten years prior thereto he and his wife, petitioner Louisa L. Horton, acquired for purposes of resale many 25 and 50 foot lots in the Progresso subdivision of Fort Lauderdale. Throughout the ensuing years and extending through the taxable years 1948 and 1949 petitioners engaged in frequent, continuous, and substantial sales of these lots as well as certain additional lots purchased from time to time in order to facilitate the sale of the smaller 25 foot lots. Throughout the same period petitioners also bought and sold real property in other subdivisions in and around Fort Lauderdale. The record establishes that during the years 1931 to 1948 petitioners participated in and held controlling interests in several corporations and were members of several partnerships, each of which we have found was engaged actively in the real estate business. After *97 a careful consideration of all the facts and circumstances set out in detail in our findings of fact, we think the pattern and the continuous course of conduct as revealed by this record indicate rather conclusively that the petitioners were actively engaged in the real estate business during the taxable periods in question. The frequency, substantiality, and continuity of the sales clearly demonstrate that the real properties involved were held primarily for sale to customers in the ordinary course of their business and were not held for purposes of investment. Petitioners contend that their sales resulted from a desire to liquidate and to retire. However, such facts do not prevent the sales from being in furtherance of an occupation or business. ; , certiorari denied, ; and . While the record shows that the petitioners did not advertise or solicit customers and maintained no regular staff of employees or agents, it is conceded that due to the large increase in population in Fort Lauderdale *98 and the increased demand for housing during and following World War II that it was unnecessary to do so. The sales were the result of purchasers seeking out the petitioners or the other members of the partnerships with which they were associated. Under such circumstances the absence of sales activity is of little significance. We therefore hold that the sales of real properties made by the petitioners in the taxable years 1948 and 1949 were of properties held primarily for sale to customers in the ordinary course of the petitioners' real estate business, and the gains realized are taxable as ordinary income. The respondent's determination is sustained. The amounts involved are not in dispute. Decision will be entered for the respondent.